IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Z.W. (a minor, by and through his parent and guardian, David Warner), AND DAVID WARNER | ) ) ) ) | Civil Action No. |
| Plaintiffs, | ) ) ) | **PLAINTIFF'S COMPLAINT** 1) Damages and Injunctive Relief for Violations of the Americans with Disabilities Act; |
| vs. | ) ) ) | 2) Injunctive Relief for Violations of Section 504 of the Rehabilitation |
| HORRY COUNTY SCHOOL DISTRICT AND RICK MAXEY, IN HIS PROFESSIONAL AND INDIVIDUAL CAPACITY AS SUPERINTENDENT, AND DOES 1-10. | ) ) ) ) ) ) | Act of 1973, 29 U.S.C. § 701 et seq. 3) Request for Preliminary and Permanent Injunctive Relief |
| Defendants. | ) ) | (**DEMAND FOR A JURY TRIAL**) |

PLAINTIFFS, Z.W., by and through his father, David Warner, and David Warner brings this action against Horry County School District and Rick Maxey (collectively "Defendants" or "the School District") for failure to accommodate Z.W.'s disability in violation of the Americans with Disabilities Act and the Rehabilitation Act.

JURISDICTION AND VENUE

1. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331, as this action arises under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("the ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("the Rehabilitation Act").

2. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

3. Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) because all parties reside in Horry County, South Carolina, and because a substantial portion of the events

described in this complaint occurred in Horry County, South Carolina, within the boundaries of the Florence Division of the District of South Carolina.

## THE PARTIES

4. Z.W. is a nine-year-old minor who resides in Myrtle Beach, South Carolina, within the boundaries of the School District. Z.W. attends Carolina Forest Elementary School, which is located within the Horry County School District. At the time of each violation herein, Z.W. was a qualified individual with a disability within the meaning of the ADA and the Rehabilitation Act.

5. The School District is located within Horry County and is a public-school district organized and existing under the laws of the State of South Carolina. At all times relevant herein, the School District was the agency responsible for providing Z.W. with full and equal access to the public education programs and activities it offers in compliance with the requirements of federal law. The School District receives federal funding.

## FACTUAL BACKGROUND

6. In 2014, at the age of three, Z.W. was identified as a student with a developmental delay. In the Fall of 2015, Z.W. began attending Carolina Forest Elementary, which is located within the Horry County School District.

7. In March of 2017, Z.W. was diagnosed by his doctor with Autism Spectrum Disorder ("Autism"), Language Disorder, and Anxiety. Z.W. is a child who has minimal communication skills. Z.W. has average intelligence, but due to his autism has difficulty with verbal language skills and acquiring socially acceptable means for expressing protest, fear, frustration, anger, his desire for something, sadness, and other emotion. He also has deficits in being able to recognize danger or unsafe circumstances. He has only recently begun speaking

and his communication is still not commensurate with his cognitive ability and chronological age.

8. On March 14, 2017, Z.W.'s parents provided Z.W.'s teacher with an evaluation from a licensed psychologist, Dr. Catherine Cheely Bradley of the Medical University of South Carolina, which disclosed Z.W.'s diagnosis of autism, a copy of which is attached hereto as Exhibit A. The evaluation recommends that Z.W. receive Applied Behavior Analysis ("ABA") therapy supervised by a Board-Certified Behavior Analyst in multiple setting, including school, daycare, and in the community. *See* MUSC Evaluation, Exhibit A.

9. The evaluation and recommendation were given to Z.W.'s teacher. Z.W.'s parents provided consent for Z.W.'s teacher to pass the MUSC Autism evaluation report to anyone in the School District who would help with Z.W. The School District's documentation confirms the evaluation report was shared with the following individuals in March of 2017: Bryanne Watkins, the sign language therapist for Carolina Forest Elementary; Morgan Emsley, the assistant principal at Carolina Forest Elementary; Kathryn Green, a school psychologist for the District; Dianna Watson, a school psychologist for the District; and Jennette Fore, another school psychologist for the District.

10. Despite receiving the MUSC Autism evaluation report in March of 2017, the School District failed to acknowledge Z.W.'s autism diagnosis and failed to consider whether permitting Z.W.'s ABA trained therapist to administer treatment during school would be a reasonable accommodation.

11. When Z.W. returned to school in the Fall of 2017, he had severely regressed to the point where he was described as almost nonverbal. He also began to develop severe problem

behaviors, including elopement, aggression, non-compliance with simple teacher instructions, undressing and exposing body parts, and regression in communication and language.

12. Due to Z.W.'s increased behavioral issues, the School District suspended Z.W. finding that "he was a danger to himself and others," which prompted a phone call from Z.W.'s father to the principal where he learned the school principal did not know Z.W. had autism.

13. Z.W.'s parents continued to make requests that the School District permit Z.W.'s ABA trained therapist to administer medically necessary treatment during school as prescribed by his physician at no cost to the School District. Z.W.'s parents advised the School District that Z.W.'s need for ABA therapy at school is in response to medical, social, and emotional problems, quite apart from the learning process. In other words, Z.W.'s need for ABA therapy was to address the very issues for which Z.W. had been suspended—his development, his ability to regulate his emotions, his ability to focus on tasks and interact with peer, and his ability to maintain his safety—not his educational needs.

14. On October 2, 2017, after repeated requests from Z.W.'s parents, the School District finally agreed to evaluate the services being provided to Z.W. at school. However, the School District denied their request to allow Z.W.'s ABA trained therapist to administer medically necessary treatment during school, as prescribed by his physician at no cost to the district.

15. The School District performed no factual investigation regarding the effectiveness of ABA therapy nor did it make any effort to determine whether ABA therapy (provided by his ABA trained therapist, at no cost to the School District) would be a reasonable accommodation for Z.W. despite knowledge that this accommodation would not fundamentally disrupt or alter the school setting.

5 | P a g e

16.    In November 20, 2017, after nine months and numerous suspensions, the School District implemented a behavioral plan for Z.W. and changed his diagnosis to autism on his IEP. However, instead of permitting Z.W.'s ABA trained therapist to administer medically necessary treatment during school at no cost to the School District, the School District began implementing a variety of "ABA-like" strategies to address Z.W.'s behavioral problems, which have caused, and continue to cause, him to regress.

17.    Over the course of the last 24 months there have been numerous incidents in which the School District has exhibited ongoing disregard for Z.W.'s disability and a deliberate indifference for his health, wellbeing, and future. For example, unbeknownst to Z.W.'s parents, in March of 2018, Z.W.'s Special Education teacher went out on maternity leave, and, the School District utilized a recent graduate from Coastal Carolina University who was without the appropriate training, credentials, and skills necessary to adequately address Z.W.'s disability. Z.W.'s parents (and other parents in the classroom) expressed concern to the School District after they noticed a significant increase in behavioral issues. According to the South Carolina Department of Education ("SCDE"), the temporary teacher's credentials did not meet minimum requirements for special education teachers.

18.    Another example of the School District's complete disregard for Z.W.'s disability is evidenced by a letter dated May 23, 2018, wherein the School District informed Z.W.'s parents that his transfer waiver was being denied for the 2018–2019 school year because of wrongful misstatements and misrepresentations regarding Z.W. made by Principal Dennis Devorick. Not only were the allegations incorrect, they offered no consideration for Z.W.'s disability and the denial of the transfer was an attempt by the School District to remove Z.W. from Carolina Forest *solely by reason of his disability*.

19. Only after Z.W.'s parents filed a formal complaint with the SCDE regarding the misrepresentations and discriminatory conduct did the School District permit Z.W. to attend the 2018–2019 school year.

20. In a letter dated February 29, 2019, a copy of which is attached hereto as <u>Exhibit B</u>, Z.W.'s pediatrician, Dr. Jennifer Poon, prescribed ABA Therapy for Z.W. as a medical necessity at forty (40) hours per week to be administered in multiple settings, including school, daycare, home, and in the community.[1]

21. Z.W.'s parents provided this letter to the School District and again requested that the School District accommodate their request to allow Z.W.'s ABA trained therapist to administer medically necessary treatment during the school day as prescribed by his physicians at no cost to the School District.

22. On August 21, 2019, the School District denied this request and (continues to deny this request) claiming that Z.W.'s "programming and services are meeting his educational needs at the current time," despite substantial evidence to the contrary and repeated instruction from Z.W.'s parents that the ABA therapy prescribed by Z.W.'s doctors is prescribed for the treatment of his neurological condition (autism) for purposes of improving his development, his ability to focus on tasks, his ability to interact with peers, and his ability to regulate his emotions—not to address his educational needs. In other words, ABA therapy supports Z.W.'s ability to receive an education, just as if Z.W. had appendicitis, an appendectomy would also support his ability to receive an education. Without ABA Therapy, Z.W. is not able to enjoy meaningful access to the benefits of a public education.

---

[1] Z.W.'s need also includes ABA therapy at municipal libraries, the post office, government buildings, theaters, and so on.

7 | P a g e

23. In December of 2019, Z.W.'s parents sent a letter to Rick Maxey, Superintendent of the School District, a copy of which is attached hereto as Exhibit C, again requesting the School District accommodate Z.W.'s parents' request that Z.W.'s ABA trained therapist be permitted to administer his medically necessary treatment at school as a reasonable accommodation under the ADA and the Rehabilitation Act.

24. The School District denied this request for a reasonable accommodation under the ADA and the Rehabilitation Act, and it continues to deny this request despite actual knowledge that Z.W. is a qualified individual with a disability under the ADA and the Rehabilitation Act, and despite the fact Z.W.'s doctors prescribed ABA therapy to be administered in multiple settings, including school, and granting this accommodation would not disrupt or fundamentally alter the school setting.

25. By refusing to accommodate this request, the School District is forcing Z.W. to either forego medically necessary treatment by attending school or forego an education by removing himself from school to receive his medically necessary treatment.

26. During a meeting on January 17, 2020, Z.W.'s father was informed by Dianne Formhals, the Autism Services Director for the School District, that the School District does not have to accommodate Z.W.'s medical needs and that the School District would not accommodate his request because "it's just something that we don't do and we have been told that it is not something that we have to do."

27. In a letter dated January 20, 2020, a copy of which is attached hereto as Exhibit D, undersigned counsel sent a letter to the Superintendent, requesting that the School District allow Z.W.'s ABA trained therapist to administer his medically necessary treatment during

school at no cost to the School District as a reasonable accommodation under the ADA and the Rehabilitation Act.

28. Instead of addressing Z.W.'s request for a reasonable accommodation under the ADA and the Rehabilitation Act, the School District ignored the request entirely and, in an effort to avoid its obligations to comply with the ADA and the Rehabilitation Act, it recommended instead that Z.W.'s parents schedule a meeting with his IEP team to discuss Z.W.'s educational services.

29. Z.W.'s claims do not center on the denial of a FAPE under the IDEA, but on *access* to school facilities. Allowing Z.W.'s ABA trained therapist to administer his medically necessary treatment during school as prescribed by his physicians is no different than permitting a service dog accompanying someone with a seizure disorder or a vision impairment.

30. The School District's refusal to accommodate Z.W.'s reasonable request under the ADA and Rehabilitation Act has resulted and continues to result in real and immediate harm to Z.W. including, but not limited to, Z.W.'s suspension from school on numerous occasions, Z.W.'s exclusion from numerous school events, and Z.W.'s removal entirely from general education. Moreover, while continuing to refuse to allow Z.W. to receive his medically necessary treatment, the School District has concluded, at the age of nine (9), that he is not capable of graduating with a diploma.

31. The School District's refusal to allow Z.W.'s ABA therapy at school has thwarted his ability to have meaningful access to and receive the benefit of the curriculum and other opportunities provided to his nondisabled peers. Granting this accommodation would provide Z.W. with meaningful access to the educational and other services provided by the School

District to his nondisabled peers. Because he has been denied the accommodation he needs in order to access those services, he has been denied the benefits of those services *solely by reason of his disability.*

32.     As a direct result of the School District's continued refusal to accommodate Z.W.'s reasonable request to receive ABA therapy in school, his mental health continues to deteriorate and he has recently experienced a significant increase in symptoms from his autism across all settings including, but not limited to, increased elopement, physical aggression requiring teaching intervention, hitting, biting, threatening, and throwing items, inability to focus, as well as a regression in social behaviors and regression in his ability to cope with stressors.

33.     The symptoms of his under-treated autism are dramatically impairing his ability to function in all settings including at school, at home, at daycare, and otherwise, and the deprivation of medically necessary therapy at school is causing him ongoing and irreparable harm.

34.     He has suffered, and will continue to suffer mental, physical, emotional, psychological, and developmental injuries if the School District does not accommodate his request for his ABA therapist to administer medically necessary treatment of 40-hours per week at school, as required under the ADA and the Rehabilitation Act.

COUNT I
Violations of Title II of the Americans with Disabilities Act,
42 U.S.C. § 12101 *et seq.*

35.     Z.W. incorporates each and every allegation above as if fully set forth herein.

36.     Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity."

37. Z.W. is a qualified individual with a disability under the ADA because his autism is a physical or mental impairment that substantially limits one or more major life activities.

38. The School District receives federal funding.

39. Z.W. requires ABA therapy at school in order to enjoy meaningful access to the benefits of a public education. The School District has refused to accommodate Z.W.'s request to permit his ABA trained therapist to administer medically necessary treatment during school, even though this accommodation is necessary to avoid discrimination against Z.W. on the basis of his autism, and even though permitting Z.W.'s ABA trained therapist to accompany him at school would not fundamentally alter any School District program or service system.

40. The School District has violated the ADA by failing and refusing to make reasonable accommodations necessary for Z.W. to access the School District's programs, activities, and/or services.

41. The School District has violated the ADA by excluding and/or not affording him an equal opportunity to participate in or benefit from its programs and services equal to that afforded to others.

42. The School District has violated the ADA by limiting him to aids, benefits, or services that fail to afford Z.W. equal opportunity to participate in the School District's benefits and services as those afforded to others.

43. The School District was on notice and was fully aware of Z.W.'s need for ABA therapy at school but refused to allow Z.W.'s ABA trained therapist to administer medically necessary treatment during the school day.

44. Z.W.'s ABA trained therapists have been available at all relevant times to provide therapy at school as a reasonable accommodation of Z.W.'s autism. The School District knew that ABA treatment for Z.W. at school could be provided at no cost to the School District and would not be disruptive or fundamentally alter the school setting.

45. As a result of the School District's refusal to accommodate Z.W.'s need for ABA therapy at school, Z.W. has been unable to attend school in a general education classroom.

46. The School District has intentionally discriminated against Z.W. by acting with deliberate indifference to Z.W.'s need for ABA therapy at school. At all relevant times, the School District knew that denying Z.W. this accommodation Z.W. would be denied the benefit of programs and services offered to others by reason of his autism.

47. Z.W.'s parents repeatedly requested that Z.W. be permitted to receive ABA therapy at school, and School District personnel has been fully aware of both Z.W.'s need for accommodation and the mental, psychological, emotional, and developmental damage that has resulted and continues to result from their refusal to provide this accommodation. The School District has been deliberately indifferent to harm they have caused.

48. Z.W. suffers ongoing and irreparable harm as a result of the School District's continued discrimination and violations of the ADA and this harm will continue until the School District's conduct is declared unlawful and enjoined by this Court. There is no adequate remedy at law.

## COUNT II
Violations of the Rehabilitation Act
29 U.S.C. 701 *et seq.*

49. Z.W. incorporates each and every allegation above as if fully set forth herein.

50. Section 504 of the Rehabilitation Act provides, in relevant part, that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ."

51. Z.W. is qualified individual with a disability under Section 504 of the Rehabilitation Act in that his autism is a physical or mental impairment that substantially limits one or more major life activities.

52. The School District receives federal funding.

53. The School District has violated the Rehabilitation Act by failing and refusing to make reasonable accommodations for Z.W. to access the School District's programs and services, by utilizing criteria and methods of administration that subject Z.W. to discrimination on the basis of his disability, by not affording Z.W. an equal opportunity to participate in the School District's benefits and services as those afforded others, by not making reasonable accommodations, and denying meaningful access to a public benefit.

54. The School District has been deliberately indifferent that Z.W.'s need for ABA therapy at school. Denying him this accommodation means that Z.W. has been denied the benefit of programs and services offered to others by reason of his autism. This denial of access to critical programs and services has resulted in mental, psychological, emotional, and developmental damage to Z.W.

55. Consequently, Z.W. is suffering ongoing and irreparable harm by the District's violations of the Rehabilitation Act, and the harm will continue unless and until the District's conduct is declared unlawful and is enjoined by this Court. There is no adequate remedy at law.

COUNT III
(Request for Injunctive Relief)

56. Z.W. incorporates each and every allegation above as if fully set forth herein.

57. An actual controversy has arisen and now exists between the parties in that Plaintiffs contend, and are informed and believe, that by refusing to accommodate Z.W.'s request that his ABA trained therapist be permitted to administer medically necessary treatment during school, the School District fails to comply with Title II of the ADA and Section 504 of the Rehabilitation Act.

58. The School District has, and continues, to discriminate against Z.W. by denying Z.W. access to the full and equal opportunity to participate in the School District's benefits and services as those afforded others in violation of Title II of the ADA and Section 504 of the Rehabilitation Act.

59. Pursuant to 42 U.S.C. § 12188, this Court is provided with the authority to grant injunctive relief, including an Order requiring the School District to permit Z.W.'s ABA trained therapist to administer medically necessary treatment during school throughout the pendency of this litigation to protect the rights of Z.W. and to prevent additional irreparable harm to Z.W.

60. Z.W. is likely to prevail on the merits of his claims because the School District's refusal to allow his ABA trained therapist to administer medically necessary treatment during school amounts to clear violations of Title II of the ADA and Section 504 of the Rehabilitation Act.

61. Z.W. has suffered and will continue to suffer irreparable mental, physical, emotional, psychological, and developmental injuries if the School District is not ordered to

provide him with meaningful access to the school by allowing his ABA trained therapist to administer medically necessary treatment during the school day.

62.     The balance of equities tip in favor of granting injunctive relief because Z.W.'s physicians have prescribed ABA Therapy as a medical necessity, his ABA trained therapist is available to administer his medically necessary treatment during school at no cost to the district, and without this injunction, Z.W. will continue to suffer irreparable mental, physical, emotional, psychological, and developmental injuries.

63.     Granting this injunction will cause little, if any, harm to the School District because this treatment is funded by Z.W.'s private insurance, and it will not fundamentally alter or disrupt the school setting.

64.     Granting this injunction is in the public interest to prohibit violations of the law and to fulfill the important goals of the ADA and the Rehabilitation Act.

PRAYER FOR RELIEF

65.     WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor against the School District, granting the following relief:

    a.     Declare the School District's failure to accommodate Z.W.'s request that his ABA trained therapist be permitted to administer medically necessary treatment to Z.W. during the school day is a violation of Title II of the Americans with Disabilities Act;

    b.     Declare the School District's failure to accommodate Z.W.'s request that his ABA trained therapist be permitted to administer medically necessary treatment to Z.W. during the school day is a violation of Section 504 of the Rehabilitation Act;

    c.    Issue a preliminary injunction requiring the School District to accommodate Z.W.'s request by permitting his ABA trained therapist to provide services to Z.W. at school during the pendency of this litigation;

    d.    Set an emergency hearing for the preliminary injunction at the earliest convenient time for the Court;

    e.    Issue a permanent injunction requiring the School District to accommodate Z.W.'s request by permitting his ABA trained therapist to provide services to Z.W. at school;

    f.    Award of damages to be proven at trial (including punitive damages if the Court deems it appropriate);

    g.    Award of reasonable attorneys' fees, costs, and expenses under any applicable law;

    h.    Award of pre-judgment and post-judgment interest at the highest lawful rates; and

    i.    Such other and further relief as the Court deems just and proper.

Respectfully submitted,

s/ *R. Michael Ethridge*_____
R. MICHAEL ETHRIDGE
Federal Bar No. 7497
MARY S. WILLIS
Federal Bar No. 12388
Ethridge Law Group, LLC
1100 Queensborough Boulevard
Suite 200
Mount Pleasant, SC 29464
methridge@ethridgelawgroup.com
mwillis@ethridgelawgroup.com